UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Joshua Bufford, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 15 CV 50106 |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) ) ) ) | Magistrate Judge Iain D. Johnston |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This case raises a recurring and often difficult question in Social Security disability cases—do the claimant's drug and alcohol problems materially cause or contribute to the alleged mental impairments? This question is relevant because a claimant cannot be found disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). One method of answering this question is to consider any periods in which the claimant was sober (referred to as "periods of sobriety" or "periods of abstinence") and then determine whether the claimant's symptoms impairments improved. The administrative law judge ("ALJ") and testifying medical expert in this case purportedly followed this approach in concluding that plaintiff was not disabled. They concluded that during his six-month jail stay in 2013, a time when he presumably was sober, his symptoms improved somewhat. Plaintiff argues that this analysis was incomplete because the ALJ and the medical expert should have considered other, earlier periods of sobriety that undermined this conclusion. Plaintiff seeks a remand under 42 U.S.C. § 405(g) so that the ALJ can consider this additional evidence.

1

To understand these issues, it is not necessary to set forth a detailed chronology of plaintiff's life and medical history. This is not to suggest, however, that the facts are sparse or uncomplicated. To the contrary, the record in this case is 1755 pages, more than double the typical length of records reviewed by the Court in such cases.

By plaintiff's own account, he has had a dysfunctional and difficult life. He was diagnosed with a learning disability when he was 13 years old and had problems in school with authority and interacting with peers. Dkt. #11 at 1-2. Around this time, he began drinking heavily. He has been diagnosed with bipolar disorder, depression, panic disorder, and antisocial personality disorder. *Id.* at 2. Turning to more recent history, plaintiff has had many hospitalizations, multiple prison stays, several suicide attempts, and ongoing counseling sessions and doctor visits. His opening brief includes a detailed chronology from August 2009 until February 2014. *Id.* at 2-6. The chronology shows a series of crises and problems. Throughout this period, plaintiff continued to use illegal drugs and abuse alcohol. He was also taking numerous medications prescribed by his doctors to treat his mental illnesses.

On March 27, 2014, a hearing was held before the ALJ. Plaintiff was then 34 years old. For the present appeal, the key testimony is that of psychologist Mark Oberlander, the impartial medical expert. His testimony can be summarized in fairly short order. He agreed that plaintiff had mental disorders such as major depressive disorder and bipolar disorder, and that plaintiff had an ongoing problem with drug and alcohol addiction. He found that these dual problems caused "marked" limitations in two of the four paragraph B criteria (social interaction and concentration, persistence, or pace), which meant that plaintiff would qualify as disabled under several of the Section 12 mental health listings. However, he concluded that during plaintiff six-month jail stay in 2013, plaintiff had "some amelioration of symptomology." R. 62. This

conclusion was based on a negative inference—namely, Dr. Oberlander stated that he reviewed the prison records from this stay (29 pages in Ex. 39F) and concluded that there was the "absence of any notation" in those records of any social difficulties. R. 67. Accordingly, if plaintiff were able to stay sober, his limitations in social interaction would be "moderate" instead of "marked." This one change was enough to prevent plaintiff from meeting a Section 12 listing.

Plaintiff's attorney then asked Dr. Oberlander whether he had considered the records from another period of sobriety. This was around August 2011 when plaintiff, who was then not in jail, was being treated by Rosecrance counselors. Counsel argued that these medical records showed that plaintiff reportedly had "lost 40 pounds over the two months due to alcohol withdrawal." R. 66. Counsel argued that, despite being sober, plaintiff continued to report the same symptoms (*i.e.* "poor memories, anxiety, hearing voices, trouble sleeping, racing thoughts") and a low GAF score of 45. *Id.* Dr. Oberlander responded as follows:

> I look at documented periods of sobriety, and, certainly, six months of incarceration provides me with sufficient certainty that there was, indeed, abstention. The reported abstention—the treating sources need[] to be *taken with some grain of salt* especially in dealing with a chronic [condition].[1]

R. 66 (emphasis added).

On April 24, 2014, the ALJ found plaintiff not disabled. She essentially adopted Dr. Oberlander's reasoning, giving his opinion "significant weight." The ALJ stated the following:

> [T]he claimant's jail records [from 2013] failed to indicate the presence of significant symptoms or any disciplinary issues. The undersigned also noted the claimant's jail records provided the only period of the claimant's sobriety since the filing of his current application.

R. 19. This was the central explanation for the ALJ's decision and was mentioned repeatedly throughout the opinion. *See* R. 17, 19, 21.

---

[1] For the last word in brackets, the transcript states in the original: "depiction [phonetic]." Because the word "condition" seems to make more sense both semantically and phonetically, the Court has substituted it in the quotation. The word "addiction" is another possibility. Regardless, this issue is not material to the analysis here.

3

Plaintiff now argues that the ALJ and Dr. Oberlander ignored several earlier periods of sobriety that undermined their conclusion. As a preliminary observation, the Court notes that the relationship between mental illnesses and substance abuse is complex. This Court recently discussed some of the difficulties involved in trying to ferret out the causal interrelationships involved with mentally ill drug addicts. *See Lewis v. Colvin*, 2016 WL 4530338, *1 (N.D. Ill. Aug. 30, 2016). The issue has also been discussed in several Seventh Circuit opinions, most notably in *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006).[2] In 2013, the Social Security Administration issued a new ruling (SSR 13-2p) seeking to provide further clarification. This ruling states that "periods of abstinence" are usually the best evidence for determining whether a drug addiction or alcoholism is a contributing material factor. At the same time, the ruling recognizes that that this often is not an easy question to answer: "We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs of alcohol."

Here, the parties agree that the ALJ and the medical expert were correct in considering periods of sobriety. But the parties dispute whether the ALJ and medical expert did so adequately and fairly. Plaintiff argues that the ALJ cherry-picked the evidence by only considering the one jail stay in the latter half of 2013, which supported her conclusion, and by ignoring two earlier jail stays as well as the August 2011 counseling at Rosecrance, which allegedly undermined her conclusion.

The first jail stay was in the spring of 2010. Plaintiff argues that during this stay, when he was allegedly not using addictive substances, he continued to experience troubling symptoms.

---

[2] Commentators have echoed this point as well. *See, e.g.,* Carolyn A. Kubitschek and Jon C. Dubin, *Social Security Disability: Law and Procedure in Federal Court*, at p. 632 (2016 Ed.) ("Determining whether a claimant would remain disabled if he or she stopped drinking is sometimes a very complicated endeavor").

Specifically, on April 14, 2010, he got into an altercation, pushing and yelling at a prison guard, leading to a strong counter-response.[3] R. 798. On the previous day, April 13th, another record noted the following about plaintiff:

> Cellmates report bizarre behavior – talking to himself, "wandering" block aimlessly, "sitting on them & talking" while they are asleep, talking to walls.

R. 800; *see also* R. 799 ("<u>PER DR. WATCH BUFFORD FOR ANY SUICIDAL SIGNS</u>) (emphasis in original). As plaintiff argues, these incidents took place almost a month after he had been in jail. So it seems likely, he further argues, that he had already been weaned from the negative effect of his addictions.

The second jail stay was apparently later in 2010, although the exact dates are not clear from plaintiff's brief. Plaintiff argues that, during this stay, he reported insomnia and depression, and complained that his medications did not help. Dkt. #11 at 8 (citing R. 803, 811, 897).

The third alleged period of sobriety is the period plaintiff's counsel referred to in the hearing, roughly in August 2011. Again, the timing and details are not spelled out in much detail in plaintiff's brief. Plaintiff claims that he told his counselors at this time that he was not drinking alcohol or taking drugs and yet continued to experience the same basic symptoms. For example, plaintiff cites to a September 21, 2011 progress note written by Dr. Shahina Jafry. She wrote the following:

> 31yr/o WM single diag w bipolar d/o alcohol abuse now in recovery program @ mission, feels depressed now since not drinking last june 12th 2011 feels hopeless worthless anger out burst shout yell weired sounds, poor sleep appetite good hx aggravated battery involve in lot of fights, feels depressed, anxious, wants to readjust medication[.]

---

[3] More specifically, the report stated: "This r/o kept telling Inmate Bufford to calm down, but he kept yelling. As this r/o was trying to subdue Inmate Bufford, he lunged backwards towards this r/o and this r/o threw him towards the booking counter. Inmate Bufford continued screaming and pushing this r/o aggressively, then c/o Edwards arrived and tried to subdue Inmate Bufford. Inmate Bufford was still aggressive towards c/o Edwards, as Edwards took Inmate Bufford to the floor. This r/o then contacted Dispatch via radio and called for backup in the jail. Inmate Bufford was still trying to fight c/o Edwards as he was being escorted back to the holding cell." R. 798.

5

R. 1292 (abbreviations, spelling, and punctuation retained from original). Dr. Jafry also stated that plaintiff's highest GAF in the last year was 45. R. 1293.

Putting aside any assessment of the strength of this evidence, the primary question is whether the ALJ and Dr. Oberlander considered it in assessing the larger question of whether plaintiff's drug and alcohol problems materially contributed to his impairments. If the ALJ and the medical expert are properly using the "periods of sobriety" analysis (such as jail stays), then they should consider all comparable periods of sobriety (such as other jail stays) absent valid and articulated reasons. The ALJ did not give a clear indication, but the only reasonable conclusion is that she did not consider these other periods. In the narrative portion of her opinion, the ALJ summarized several potential periods of sobriety, including the 2010 jail stay and the 2011 counseling period at Rosecrance, among others.[4] In doing so, the ALJ did not offer any clear statement as to how she viewed this evidence—for example, she never indicated whether she believed plaintiff's self-reports that he was not using addictive substances during these periods.

After setting forth this evidence, the ALJ then summarized Dr. Oberlander's testimony as follows: "Dr. Oberlander noted that when examining the claimant's periods of sobriety, from the medical evidence of record, there was an absence of notation of social difficulty." R. 21. Interestingly, the ALJ used the plural, "*periods* of sobriety," seemingly harkening back to the ALJ's earlier summary of multiple periods of sobriety. This gives the impressions that Dr. Oberlander considered some or all of these earlier periods of sobriety and that the ALJ may have done so as well. But several factors make this interpretation unreasonable and highly unlikely.

---

[4] *See* R 20 ("A March 2011 consultative psychological examination report noted the claimant reported a 10-month period of sobriety in 2010. Coincidentally, the claimant also reported spending 8 months in jail in 2010 for aggravated robbery."); *id.* ("By August 2011, the claimant reported an early two-month period of sobriety (29F/2). By April 2012, during a consultative examination, the claimant reported attending Alcoholics Anonymous meetings five times per week and that he no longer was consuming any alcohol."); *id.* ("claimant was able to maintain a few months sobriety in early 2013").

Dr. Oberlander was clear that he considered only the one period in 2013, stating that it alone provided "sufficient certainty" for his opinion. R. 66. When asked about the 2011 period when plaintiff was treated at Rosecrance, Dr. Oberlander dismissed it as not worthy of consideration on the ground that treating sources should be taken with a "grain of salt."[5] He never offered any opinion about the earlier jail stays. Although it should be noted that plaintiff's counsel did not point them out during the hearing, evidence of the earlier jail stays was contained in the record. Given that the ALJ relied heavily on Dr. Oberlander's opinion and given that he did not consider these earlier stays, this establishes that the ALJ did not consider them either. This conclusion is reinforced by the ALJ's failure to analyze them in her opinion. She never commented on the evidence cited by plaintiff, such as the report that plaintiff engaged in "bizarre" behavior and fought with guards during the 2010 jail stay.

In its response brief, the Government does not make any serious argument that the ALJ considered this evidence. Instead, the Government suggests—without making an explicit argument and without citing to any supporting case law or SSRs—that the earlier sobriety periods could not be considered because they occurred before the January 2012 filing date of plaintiff's application. It is possible that the ALJ relied on this rationale because the ALJ did describe the 2013 jail stay as being "the only period of the claimant's sobriety *since the filing of his current application*." R. 19 (emphasis added). But this phrase was quietly slipped into this sentence with no further explanation nor citation to any legal rule to support the apparent decision to exclude pre-filling periods of sobriety.

Assuming that the ALJ relied on this rationale, a point that is not entirely clear, the Court finds that a remand is still warranted for two reasons. First, as plaintiff points out, the ALJ

---

[5] The phrase "to take something with a grain of salt" generally means "to understand that something is likely to be untrue or incorrect." http://dictionary.cambridge.org/us/dictionary/english/take-something-with-a-grain-of-salt. For the origin of the idiom, *see* https://www.youtube.com/watch?v=SeUr5_hYjHk.

7

summarized and relied on other medical evidence from the pre-filing period to support her opinion. Therefore, under basic principles of Social Security disability law, it would be unfair and inconsistent if the ALJ then excluded evidence favorable to plaintiff from this same period. *See, e.g., Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("the ALJ identified pieces of evidence in the record that supported her conclusion that Mr. Scrogham was not disabled, but she ignored related evidence that undermined her conclusion"). Second, contrary to the Government's unsupported argument, SSR 13-2p indicates that such evidence should be considered:

> The period of abstinence does not have to occur during the period we are considering in connection with the claim as long as it is medically relevant to the period we are considering. For example, a claimant for title XVI payments has a permanent physical impairment(s) that in some people improves when they stop abusing alcohol. However, there is evidence from *a year before the date of the application* showing that when this claimant stopped drinking, the impairment(s) improved only minimally. In this case, we may conclude that the impairment(s) would not improve to the point of nondisability in the absence of DAA.

SSR 13-2p at n.18 (emphasis added).

The Government's other argument is to suggest that the evidence from the two earlier prison stays is "isolated" and insufficient to support plaintiff's larger arguments. Dkt. #18 at 7. However, under the *Chenery* doctrine, this argument is not one this Court can now consider here. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("the *Chenery* doctrine [] forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced"). However, it may be considered on remand.

In sum, the Court finds that the ALJ and medical expert should have considered these other periods of sobriety. More broadly, the Court also urges the ALJ and medical expert on remand to give greater consideration to the medical record as a whole. Here, the record is lengthy (1755 pages). However, the ALJ's opinion and the expert's testimony largely skipped over most

of the evidence and instead narrowly focused on the one alleged period of abstinence, even though the records from this one period were relatively sparse (only 29 pages) and provided little definitive information (merely the negative inference that certain facts were lacking). Focusing on periods of abstinence is not improper and indeed has been referred to as critical part of the inquiry, but at the same time, it should not become a mechanical exercise to the exclusion of the record as a whole, especially in this area where courts and commentators have noted that there are often no easy or quick answers.

## CONCLUSION

For these reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: September 26, 2016         By: _____
                                     Iain D. Johnston
                                     United States Magistrate Judge